# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **ESMERALDA CASTANEDA, et. al.,** § § § | |
| Plaintiffs, § § | |
| § | **CIVIL ACTION NO.** |
| v. § | |
| § | |
| § | **COLLECTIVE ACTION** |
| **SWIFT BEEF COMPANY,** § | |
| **SWIFT & COMPANY, INC.,** § | |
| **JBS SWIFT & COMPANY,** § | |
| **and JBS S.A.** § | |
| § | **JURY TRIAL DEMANDED** |
| Defendants. § | |

## COMPLAINT

Plaintiff, individually and on behalf of all others similarly situated ("Plaintiffs"), by and through her counsel, for her Complaint against Defendants Swift Beef Company, Swift & Company, Inc., JBS Swift & Company and JBS S.A (collectively "Swift" or "Defendants"), seek to recover for Equity Group's violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 *et seq.*, and hereby state and allege as follows:

## **INTRODUCTION**

1. This is a representative action brought pursuant to FLSA § 216(b) by Plaintiff on behalf of herself and all other similarly situated current and former production employees of Swift at its Greeley Colorado for purposes of obtaining relief under the FLSA for unpaid wages, unpaid overtime wages, liquidated damages, costs, attorneys' fees, and/or any such other relief the Court may deem appropriate.

2. Swift operates a Beef processing plant in Greeley Colorado, ("Greeley facility"). The complained of unlawful compensation system at issue in this Complaint has affected Defendants' present and former hourly production employees at this location.

3. In *IBP, Inc. v. Alvarez,* 126 S. Ct. 514 (2005), the United States Supreme Court unanimously affirmed a ruling that IBP's wage and hour policies – those at issue in this case – violated the Fair Labor Standards Act of 1938 ("FLSA").

4. Swift uniformly denies hourly wages and overtime premium pay to its employees, by requiring them to perform "off the clock" work. Swift's deliberate failure to pay employees earned wages and overtime compensation violates federal law as set out in the Fair Labor Standards Act.

5. Plaintiffs perform multiple tasks, but are all victims to the same illegal policy and practice of failing to pay workers for all time worked, including unpaid, but compensable break periods, unpaid hourly wage times and unpaid overtime premium wage times.

## JURISDICTION AND VENUE

6. The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiffs' FLSA claims is based upon 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331-37.

7. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c), because Swift does business in this district and a substantial part of the unlawful conduct giving rise to the claims occurred in this district.

## PARTIES

8. Defendants Swift Beef Company, Swift & Co. Inc., and JBS Swift & Co are Delaware corporations with a principal place of business in Greeley, Colorado. Defendant JBS, S.A, is a Brazilian corporation, headquartered in Sao Paolo, Brazil, which operates meat production facilities throughout the world. On or about July 12, 2007, JBS, S.A., completed the acquisition of Swift & Company and formed JBS Swift & Company. Upon information and belief Defendants JBS Swift & Co., and

JBS, S.A., acceded to all liability of Swift & Company, Inc. All defendants are corporations engaged in interstate commerce and in the production of goods for commerce throughout the United States. JBS can be served with original service of process at its world head quarters in Sao Paolo, Brazil. Swift & Company, Inc. and JBS Swift & Co. can be served with original service of process at their corporate headquarters located at 1770 Promontory Circle, Greeley, CO 80634.

9.   Plaintiffs are current and former Swift employees who work(ed) at the Swift Greeley facility within the last three years, dating back to August 27, 2005.

10.  Plaintiff is a resident and domiciled in the State of Colorado. Plaintiff has concurrently filed her Consent to Become Party Plaintiff pursuant to 29 U.S.C. § 216(b).  See Exhibit A.

## GENERAL ALLEGATIONS

11.  Defendants' business at the Greeley facility is the processing of high quality unadulterated beef products for consumption by the public.

12.  Plaintiff's and other similarly situated employees safely process uncontaminated beef products as part of their primary job responsibility.

13.  As a part of Plaintiffs' jobs, Plaintiffs are required to don, doff, and sanitize protective equipment and sanitary clothing off the clock, while

on breaks and at the beginning and end of the work day. After obtaining required gear and already performing compensable work, Plaintiffs are not paid for walk time to and from the lockers and production area, walk time to and from wash stations occurring before the beginning of Plaintiffs shift, during breaks, and at the end of Plaintiffs shifts. Plaintiffs also were not compensated for time spent maintaining knives off the clock.

14.  Prior to shift start Plaintiffs go to a designated area to receive required sanitary clothing and/or safety and product protective equipment (PPE). The employees are required to don certain equipment before moving into the production areas. The employees are required to perform washing activities associated with preparing for work in the production area. Depending on whether the position worked employees may be required to acquire special tools for the work to be performed. Plaintiffs then walk a considerable distance to their positions on the line.

15.  When Plaintiffs leave the line for unpaid breaks or at the end of their shift, they again walk a considerable distance to their respective doffing area where they remove their personal protective equipment, wash or sanitize themselves, their personal protective equipment, sanitary clothing, and/or equipment or tools and return various clothes, personal protective equipment, equipment or tools to the proper areas.

16. Swift owns and operates beef processing facilities in Greeley Colorado and throughout the country. The unlawful compensation system at issue in the Complaint has affected Defendant's former and present hourly production employees at this location.

17. Under Swift's wage compensation system, Swift pays Plaintiff and others similarly situated employees only regularly scheduled time that they are on the production assembly line or in production areas under a system known as scheduled time, master time, master card, master key, line time or gang time, collectively referred to herein as "master time". Conversely, as a matter of policy and practice, Swift does not pay its hourly employees for required pre-production line and post-production line activities that are necessary and integral to their overall employment responsibilities, such as donning and doffing protective and sanitary equipment, cleaning and sanitizing that equipment as well as themselves, wait time associated with cleaning and sanitizing that equipment as well as themselves after completion of the first principal activity walking to and from the production line from their locker or dressing area after already performing compensable activities, and waiting in line to return required supplies, tools and other equipment needed for line activities. In addition, Swift does not pay its employees for time spent waiting at the line, prior to

the line start up. Plaintiffs are required to report to duty before the start of the master time clock and required to continue work after the master time clock has stopped.

18. During the course of the day, Plaintiffs are provided unpaid breaks requiring them to walk considerable distances where they remove sanitary clothing, safety and product protection equipment for their break. The remaining time allowed for the break is further shortened by the requirement for the employee to wash and sanitize, don his or her sanitary clothing and personal protection equipment and return to the workstation. Plaintiffs assert these unpaid breaks are compensable. Alternatively if the total unpaid break is not deemed compensable Plaintiffs allege they are owed compensation for the walk time prior to and after unpaid breaks, the time spent donning and doffing clothing and equipment pre and post break respectively, and the time spent washing and/or waiting to wash themselves and their equipment.

19. Defendant deducts from Plaintiffs daily time worked, without regard for the actual time spent on break, one uncompensated break of fixed duration.

20. The time for which Plaintiffs and other similarly situated employees are paid is significantly less than the time they spend at work

between the time they begin their integral, essential and indispensable work duties and the time they arrive at their workstations on the line.  The work time for which Plaintiffs are not paid include, but are not limited to:  (1) changing into the protective required work uniforms, sanitary clothing and protective safety equipment that can include, among other things (depending on the task):  ear plugs; smocks; chain mesh; surgical scrubs; safety boots; hair nets; safety glasses, face nets; hard hats; aprons; face shields, belts with holsters and knives; and hand and arm protections; and (2) walking to and from changing areas, work areas and break areas; washing activities; and (3) breaks  that are effectively compensable .

21. The walking time for which Plaintiffs are not paid occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity.

22. The required protective work uniforms, sanitary clothing and protective safety equipment that Plaintiffs must wear, and for which they are not paid for donning and doffing times, is required by Swift and/or by government regulation.  Plaintiffs' jobs are dangerous and involve serious health and safety risks.  The circumstances of Plaintiffs' jobs, including vital considerations of health and hygiene, require them to wear the protective work uniforms, sanitary clothing and safety and product protective

equipment. These donning, doffing, washing activities, compensable unpaid breaks and walking duties all add up to a significant amount of time every day for which Plaintiffs and others similarly situated are not paid.

23. In addition to depriving Plaintiff and others similarly situated of hourly wages for compensable time pursuant to the FLSA, Defendant Swift's failure to accurately account for and report all compensable time worked by the Plaintiff and others similarly situated, and has deprived Plaintiff and others similarly situated of what would otherwise be overtime pay, pursuant to the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

24. Plaintiffs bring Count I, the FLSA claim, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b). In addition to the claims of individually named Plaintiff, Plaintiff brings this action as representative of all similarly situated former and current employees of the Greeley facility. The potential class of "opt-in" employees can be defined as:

> All current and former hourly processing employees of Defendant, paid under a master or scheduled time compensation system in which individuals' time card punches are not the basis for starting and ending hours worked, who worked at the Greeley facility since August 2005, and who were not paid for all the time spent performing compensable work-related tasks or legally compensable time, including, but not limited to authorized unpaid break times, donning and doffing times, washing activity times, walking to changing areas and walking times to and from break areas or donning and doffing areas.

25. The FLSA claims may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

26. Plaintiff, individually and on behalf of other similarly situated employees, seeks relief on a collective basis challenging, among other FLSA violations, Defendant's practice of failing to accurately record all hours worked and failing to pay employees for all hours worked, including overtime compensation.

27. The number and identity of other Plaintiffs yet to opt-in and consent to be party Plaintiffs may be determined from the records of Defendants, and potential class members may easily and quickly be notified of the pendency of this action.

28. On information and belief, the Greeley facility employs approximately 3000 hourly wage employees who potentially have FLSA claims similar to the claims set out herein. Consequently, joinder of all collective action members in a single action is impracticable.

29. Potential collective action members may be informed of the pendency of this class action through direct mail.

30. There are questions of fact and law common to the class that predominates over any questions affecting only individual members. The

questions of law and fact common to the class arising from Defendants' actions include, without limitation, the following:

a) Whether Plaintiffs were compensated for time spent donning and doffing clothing and protective gear, washing, and walking to and from their job posts;

b) Whether the donning, doffing and washing activities at issue are integral or indispensable to Defendant's business activities;

c) Whether Plaintiffs were entitled to compensation for time spent donning and doffing, washing activity time, and walking time to and from "the line";

d) Whether compensable activities such as washing or sanitizing occur prior to donning at the beginning of the shift and whether such activities occur after doffing at the end of the shift;

e) Whether Plaintiffs' donning, doffing, washing activity, and walking time is integral and indispensable to their principal activities;

f) Whether Defendants failed to pay employees for unpaid breaks that were effectively compensable.

g) Whether Defendants' compensation policy and practice accurately accounts for the time Plaintiffs are actually working;

h) Whether Defendants' compensation policy and practice is illegal;

i) Whether Defendants had a policy and practice of willfully failing to record and compensate employees for all time worked; and

j) Whether Defendants failed to accurately record all compensable time, resulting in a failure to compensate Plaintiff and other similarly situated employees of regular hourly wages and

      overtime pay, in violation of Defendants' policies and procedures and the mandate of the FLSA.

31. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the federal law claims.

32. The Collective Action Representatives' claims are typical of those of the similarly situated employees in that these employees have been employed in the same or similar positions as the Collective Action Representatives and were subject to the same or similar unlawful practices as the Collective Action Representatives.

33. A collective action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the similarly situated current and former employees. The presentation of separate actions by individual similarly situated current or former employees could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Collective Action members to protect their interests.

34. The Collective Action Representative is an adequate representatives of the similarly situated current and former employees because they are employees of the same processing plant and their interests do not conflict with the interests of the other similarly situated current and former employees they seek to represent. The interests of the members of the class of employees will be fairly and adequately protected by the Collective Action Representatives and their undersigned counsel, who have extensive experience prosecuting complex class action lawsuits.

35. Maintenance of this action as a collective action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of the collective action who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single collective action can determine, with judicial economy, the rights of all collective action members.

## COUNT I

### Violation of the Fair Labor Standards Act of 1938

**(Brought Against Defendant by All Individually-Named Plaintiffs and on Behalf of All Others Similarly Situated)**

36.     Plaintiffs reassert and incorporate by reference paragraphs 1 through 35 as set forth above as if fully restated herein.

37.     At all time material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et. seq.*

38.     The individually named Plaintiffs and all similarly situated employees are victims of a uniform and facility-wide compensation policy and practice, in violation of the FLSA.

39.     Equity Group violated the FLSA by failing to account for all compensable time of its employees that resulted in a failure to pay Plaintiffs and others similarly situated for compensable hourly wages and overtime premium pay.

40.     Equity Group violated the FLSA by failing to pay for time donning and doffing essential required equipment, integral to the principle work activity.

41.     Equity Group failed to account for and pay for time walking to and from the line to break areas and/or donning and doffing areas.

42.     Equity Group failed to account for and pay for time spent clearing security and for time walking to and from security to donning and doffing areas.

43. Equity Group failed to account for and pay for time allocated as unpaid breaks. In the alternative, Equity Group failed to pay for walk time to and from unpaid break areas, time spent donning and doffing on unpaid breaks, and washing activities associated with breaks.

44. In perpetrating these unlawful practices Equity Group has also willfully failed to keep accurate records for all of the time worked by its hourly employees.

45. The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

46. Equity Group was, and is, subject to the overtime pay requirements of the FLSA because it is an enterprise engaged in commerce and its employees are engaged in commerce.

47. Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations. None of the FLSA exemptions apply to the Plaintiffs. Accordingly, Plaintiffs must be paid overtime pay in accordance with the FLSA.

48.     Equity Group's failure to accurately record compensable work time was willfully perpetrated Equity Group has not acted in good faith nor with reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid hourly wages and overtime premium pay described above pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).  Alternatively, should the Court find Equity Group did not act willfully in failing to pay all hourly wages and overtime premium pay wages, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

49.     As a result of the aforesaid willful violations of the FLSA's overtime provisions, overtime compensation has been unlawfully withheld by Equity Group from Plaintiffs for which Equity Group is liable pursuant to 29 U.S.C. § 216(b).

50.     Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Equity Group acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

51. Pursuant to FLSA, 29 U.S.C. § 216(b), successful Plaintiffs are entitled to reimbursement of the costs and attorney's fees expended in successfully prosecuting an action for unpaid wages and overtime wages.

WHEREFORE, it is respectfully prayed that this Court grant to the Plaintiffs the following relief:

   a) At the earliest possible time, issue an Order allowing Notice or issue such Court supervised Notice to all similarly situated current and former Swift employees (working at the Swift Greeley Colorado location in the last three years) of this action and their rights to participate in this action.  Such Notice shall inform all similarly situated current and qualified former employees of the pendency of this action, the nature of this action, and of their right to "opt in" to this action if they worked "off the clock" for times not paid, including time that may be paid at overtime rates.

   b) Issue an Order directing and requiring Defendants Swift to pay Plaintiff and all other similarly situated employees damages in the form of reimbursement for unpaid hourly and premium overtime wages (past and future) for all time spent performing

    compensable work for which they were not paid pursuant to the rate provided by the FLSA;

c) Issue an Order directing and requiring Swift to pay Plaintiffs and all other similarly situated employees liquidated damages pursuant to the FLSA in an amount equal to, and in addition to the amount of wages and overtime wages owed to them;

d) Issue and Order directing Swift to reimburse Plaintiff and other similarly situated employees for the costs and attorneys fees expended in the course of litigating this action, pre-judgment and post-judgment interest;

e) Provide Plaintiffs with such other and further relief, as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

All Plaintiffs hereby request trial by jury of all issues triable by jury under Colorado and federal law.

Dated:  August 26, 2008

Respectfully submitted,

**THE COCHRAN FIRM, P.C.**

<u>/s/ Robert J. Camp</u>
**ROBERT J. CAMP**
505 North 20th Street, Suite 825
Birmingham, AL  35203
(205) 244-1115 (Phone)
(205) 244-1171 (Fax)

*Attorney for Plaintiffs*