*10-18*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 08-cv-01833-RPM

ESMERELDA CASTANEDA, *et al.,*

      Plaintiffs,

v.

JBS USA, LLC,

      Defendant,

UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL NO. 7,

      Interested Party.

---

## (Defendant's proposed) FINAL PRETRIAL ORDER AND DISCOVERY PLAN: PHASE II

---

### DATE AND APPEARANCES

    The Final Pretrial Conference was held on October 21, 2011, at 3:00 p.m.

    Present for Plaintiffs were Joseph D. Lane, Esq., Robert Camp, Esq., and Lance H. Swanner, Esq. of The Cochran Firm, and Diane Vaksdal Smith, of Burg Simpson Eldredge Hersh & Jardine, P.C.

    Present for Defendant were W.V. Siebert and Kelly K. Robinson of Sherman & Howard L.L.C.

## JURISDICTION

The Court has original jurisdiction over this matter, pursuant to 28 U.S.C. § 1331

(Federal Question Jurisdiction).  The Fair Labor Standards Act authorizes court actions by

private parties to recover damages for violation of the FLSA's wage and hour provisions.  Venue

is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(and (c), because JBS does

business in this district and a substantial part of the alleged unlawful conduct giving rise to the

claims occurred in this district.

## CLAIMS AND DEFENSES

### A.     Plaintiffs' Claims

Plaintiffs claim that they are entitled to additional compensation for their  unpaid meal

period.  Additionally, Plaintiffs claim that they receive insufficient compensation for walk time

because they believe the measurements were all based on uncongested walking as opposed to

congested walk time.

### B.     Defendant's Claims and Defenses

1.     Issues to Be Decided by the Court at the Phase II Trial Are:

(i)     Whether the Court must compel arbitration, pursuant to either the FAA, 9 U.S.C.

§§ 1 *et seq.*, or section 301 of the LMRA, 29 U.S.C. § 185, of Plaintiffs' claim that they did not

receive a 30-minute meal break?

(ii)     Whether the FLSA and/or regulations issued pursuant to the statute require

employees be provided a 30 minute meal break before such meal break can be considered non-

compensable?

2

(iii)   Whether the plug times paid for donning and doffing at the meal break, based on the 2007 measurements, are unreasonable?

(v)   Whether the walk time paid based on the 2007 and 2010 measurements are unreasonable?

(vi)   Whether the amount of attorneys' fees and costs Plaintiffs seek to recover are reasonable and were necessary?

## STIPULATIONS

None.

## PENDING MOTIONS

(1)   Plaintiffs' Motion for Order Certifying Class (filed April 10, 2009).

(2)   Defendant's Motion to Void Consents (filed October 25, 2010).

(3)   Defendant's Motion to Compel Arbitration (filed October 18, 2011).

## WITNESSES

a.   **Plaintiffs' Order of Proof**.


b.   **Defendant's Order of Proof**:

Will Call:

1. Doug Schult (1 hour)

2. John Sittig (1 hour)

May Call:

1. Any witness necessary for impeachment, rebuttal or foundation.

EMPLOY\851110.2

2.  Mark Lauritsen, Vice President, United Food and Commercial Workers Union International Union.

3.  A representative from United Food and Commercial Workers Union Local No. 7.

4.  Trevor McAlester, founder and Chairman of Ease, Inc.

5.  The current industrial engineer for the United Food and Commercial Workers Union.

## EXHIBITS

List the exhibits to be offered by each party and identify those to be stipulated into evidence.  This list should be specific enough so that other parties and the court can understand, merely by referring to the list, each separate exhibit which will be offered.  General references such as "all deposition exhibits" or "all documents produced during discovery" are unacceptable.

*Plaintiff(s):*

*?????.*

*Defendant(s):*

1.  Exhibits offered and admitted into evidence at the initial trial.

2.  Exhibit V.  Chart of compensation due for walk time to those who previously did not receive the compensation.

Copies of listed exhibits must be provided to opposing counsel no later than seven days after the Final Pretrial Conference.  The objections contemplated by Fed. R. Civ. P. 26(a)(3)

4

shall be filed with the clerk and served (by hand delivery or facsimile) no later than fourteen

days after the exhibits are provided.

## DISCOVERY

Plaintiffs request information they previously sought and were provided in the liability

phase of the litigation as follows:

      i.     <u>Written discovery</u>:

      1.     Payroll records for all plaintiffs. Plaintiffs' First Request for Production,

attached as **Exhibit 1**, Request No. 3 sought payroll records for all opt-in Plaintiffs. Defendant

produced the records in PDF format (**Exhibit 2**) and in electronic format. *See also* Plaintiffs'

Second Request for Production of Documents attached as **Exhibit 3** and Defendant's Response

to Plaintiffs' Second Request for Production of Documents attached as **Exhibit 4**. *See also*

Plaintiffs' Fifth Request for Production of Documents, Request Nos. 3 and 4 (**Exhibit 5**) and

Defendant's Response (**Exhibit 6**).

      2.     Work assignment logs in native format that include the identification of

each Plaintiff's work assignments during the applicable times. As the Court is aware, because of

absenteeism, product mix and a variety of other issues, employees are transferred to different

positions on a daily basis. The only records that will show work assignments are the supervisor

daily time sheets, which Plaintiffs requested to examine and were given access to do so. *See* e-

mails attached as **Exhibit 7**.

      3.     Schematics for the plant were previously requested in Plaintiffs' First

Request for Production of Documents, **Exhibit 1**, Request No. 27. Defendant provided the

5

schematics and, in fact, they were admitted into evidence during the Phase 1 trial.

Plaintiffs have not set forth any subjects for which they need written discovery in order to proceed with trial regarding damages.

    ii.   <u>Depositions:</u>

        1.   "Supplemental" deposition of the videographer of the videos that the Court properly rejected as evidence of actual time increments and who Plaintiffs had the opportunity to depose prior to the liability phase of the litigation and who Plaintiffs called as a witness at trial and thoroughly examined at trial.

        2.   30(b)(6) deposition to provide background information regarding payroll records and to respond to questions posed by Plaintiffs' expert. Plaintiffs previously served a 30(b)(6) Notice of Deposition which included topics concerning payroll records that were provided to Plaintiffs. *See* Notice of Deposition attached as **Exhibit 8**.

        3.   Expert Witness Disclosure

        Plaintiffs claim that they need an industrial engineer and a statistical expert to analyze the data produced by the industrial engineer. However, Plaintiffs fail to set forth a plan regarding how much time the industrial engineer will need at the plant, his/her methodology, information sought to be gathered, or need for whatever information is being sought. Plaintiffs previously retained an expert who opined on the time spent by employees donning, doffing, walking and related activities. The Court properly ruled that the expert could not testify. Thus, Plaintiffs seek the proverbial second bite of the apple. Moreover, the time frame suggested for the designation of experts (three months from the date of the Pretrial Order)

6

is overly generous (especially considering Plaintiffs have known since August 2011 that they would need an expert and their expert could have been completing much of his/her review of evidence and documents produced over the last couple of months) and the amount of time for designation of rebuttal experts (one month after designation of opponent's expert) is far too conservative. Rebuttal experts should be allowed no less than six weeks to complete his/her rebuttal reports.

Finally, Plaintiffs' suggestion that the timing set forth in the Federal Rules of Civil Procedure for responding to discovery be shortened is not reasonable or practical. It is not realistic to respond to written discovery within twenty days.

## DEFENDANT'S PROPOSED DISCOVERY PLAN

Because Plaintiffs failed to confer with Defendant prior to filing their proposed Final Pretrial Case Management Order – Damage Phase, which is actually a Scheduling Order, Defendant suggests the following:

1.      The parties shall be limited to one set each of interrogatories not to exceed 25 including subparts, one set of requests for production of documents limited to 25, one set of requests for admission limited to 25.

2.      Within 30 days of the entry of this order, Plaintiffs shall identify all opt-in Plaintiffs whom it intends to call as witnesses at trial so that Defendant has an opportunity to depose such persons. It is not feasible to depose all of the opt-in Plaintiffs and Defendant's due process should not be violated by not being able to engage in meaningful discovery of the testifying Plaintiffs.

EMPLOY\851110.2

3.      If Plaintiffs are permitted to designate an additional expert(s), Plaintiffs shall

identify the expert(s) and the area of expert testimony by November 4, 2011, and shall provide

complete required disclosures, including reports, by December 21, 2011.  If access to the plant is

necessary, Plaintiffs should be required to obtain Court approval for limited access in terms of

time, location and methodology so as not to interfere with Defendant's operations.

4.      Defendant's experts shall be disclosed by February 14, 2012.

4.      Discovery cut-off date of December 31, 2011 for non-expert discovery and

February 28, 2012 for expert discovery.

## SPECIAL ISSUES

None.

## SETTLEMENT

Counsel for the parties met in person on September 19, 2011, to discuss in good faith the

settlement of the case.

The participants in the settlement conference included counsel for Plaintiffs and

Defendant, representatives from UFCW Local 7 and a representative for Defendant.

The parties were promptly informed of all offers of settlement.

Counsel do not intend to hold future settlement conferences.

It appears from the discussion by all counsel that there is little possibility of

settlement.

There is no other settlement conference before the magistrate judge or other

alternative dispute resolution method scheduled.

8

## OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provisions of Rule 68 of the Federal Rules of Civil Procedure (Offer of Judgment) and have discussed it with the clients against whom claims are made in this case.

## EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to ***prevent manifest injustice.*** The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the Scheduling Order. In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## TRIAL AND ESTIMATED TRIAL TIME;
## FURTHER TRIAL PREPARATION PROCEEDINGS

(1)     The trial is to the court.

(2)     The case is set for _____ days on the Court's docket. Plaintiffs estimate the trial will last _____ days. Defendant estimates the trial will last three days.

(3)     The trial will take place in the United States District Court for the District of Colorado in Denver, Colorado.

(4)     There are no other orders pertinent to the trial.


DATED this _____ day of October, 2011.


9

BY THE COURT:

_____

Richard P. Matsch, Senior District
Judge

FINAL PRETRIAL ORDER SUBMITTED:

_____

**DIANE VAKSDAL SMITH**
Burg Simpson Eldredge Hersh & Jardine
40 Inverness Dr. E
Englewood, CO  80112
Phone:  (303) 792-5595

**W. V. BERNIE SIEBERT**
**KELLY K. ROBINSON**
Sherman & Howard, L.L.C.
633 17th Street, Suite 3000
Denver, CO  80202
Phone:  (303-297-2900)

(Rev.12/2010)

CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of October, 2011, the foregoing **(Defendant's proposed) FINAL PRETRIAL ORDER AND DISCOVERY PLAN: PHASE II** was served via email, as indicated below, to each of the following:

Robert J. Camp, Esq.
Email: rcamp@cochranfirm.com

Lance H. Swanner, Esq.
Email: lanceswanner@cochranfirm.com

Joseph D. Lane, Esq.
Email: jlane@cochranfirm.com

Carl E. Underwood, III, Esq.
Email: carlunderwood@cochranfirm.com

Diane Smith, Esq.
Email: dsmith@burgsimpson.com

John P. Bowen, Esq.
Email: jbowen@ufcw7.com

11

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT FOR COLORADO

CIVIL ACTION NO. 08-cv-01833-RPM-KLM

**ESMERALDA CASTANEDA, et al.,**

     **Plaintiffs,**

v.

**SWIFT BEEF COMPANY, et al.,**

     **Defendants.**

---

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JBS USA, INC., f/k/a JBS SWIFT & COMPANY

---

Pursuant to Federal Rules of Civil Procedure 34, Plaintiffs request that Defendant JBS USA, Inc., f/k/a JBS Swift & Company (hereinafter referred to as "Swift"), respond to the following requests for production and produce the documents identified below.  Production is to be made at such time and place as may be agreed upon by counsel for both parties, within thirty days of this request.

### DEFINITIONS AND INSTRUCTIONS

    A.    "Defendant," "Swift" and the pronoun "you" refer to JBS USA, Inc., f/k/a JBS Swift & Company and its agents, employees, representatives, and unless privileged, attorneys, as well as any entity, agency or committee formed, controlled by or otherwise affiliated with JBS USA, Inc., f/k/a JBS Swift & Company.

    B.    These requests are directed to Swift's corporate headquarters, as well as to the plant currently subject to discovery:  Greely, Colorado beef processing plant.

    C.    As used in these requests, the words "document" or "documents" has the broadest possible meaning accorded to it under Fed. R. Civ. P. 34 and includes, but is not limited to, any

and all documents and information maintained electronically on any computer hard drive, disk, diskette, tape, video or other information storage format.

D.    The word "person" means any natural person and/or any corporation, partnership, association, joint venture, limited partnership, committee, any government and/or governmental body, commission, board and/or agencies and/or other business association and/or entity, including both the singular and the plural.

E.    The term "communication" means any oral or written utterance, notation or statement of any nature between or among two or more individuals, including, but not limited to, communication by telephone, electronic mail and correspondence.

F.    If any document responsive to this request was, but is no longer, in your possession, custody or control, please identify each such document including:  (a)the type or character of the document (e.g., letter, memorandum, signed statement, notes, etc.); (b) title, if any, of the document; (c) the name and address of the author of the document; (d) the name and address of the recipient of the document, if any; (e) the names and addresses of all recipients of copies of the document, if any; (f) all information contained in each such document; (g) the date and circumstances under which each such document ceased to exist or to be in your possession, custody or control; (h) the reasons that each such document was caused to, or happened to, cease to exist; (i) the time period during which each document was maintained; (j) the location of each such document; (k) the person or persons from whom each such document may be obtained.

G.    If you are claiming that any document or documents requested herein are privileged, describe each such document so that it may be readily identified and state the basis of the privilege claim.

H.     This request is continuing in nature so as to require supplemental or amended responses as provided in Federal Rule of Civil Procedure 26(e).

I.     If the requested documents are maintained in a file, please produce the file folder or container with the documents.

J.     "Identify," when used in reference to a document, means to set forth its title and date of preparation, number of pages, subject matter and present location, and to identify its author, addressee, and each person to whom copies were sent.

K.     "Relating to" or "relate to" means concerning, referring to, received from, addressed to, sent to, alluding to, responding to, announcing, explaining, evaluating, discussing, showing, describing, studying, reflecting, analyzing or consulting.

L.     "And" as well as "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the specifications all responses which might otherwise be construed to be outside the scope.  "Each" shall be construed to include the word "any."  "Any" shall be construed to include the word "each."  "Including" shall be construed to include the phrase "without limitation."

M.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses, whether necessary to bring into the scope of the specification all responses which might otherwise be construed to be outside the scope.

N.     The use of any singular word includes both the singular and the plural of that word, and vice versa.  The use of any masculine or feminine pronoun includes both the masculine and feminine.

O.     The time period covered by these requests is from August 27, 2005 to the present and continuing for corporate headquarters and Greely.

P.    The references to "equipment," "gear," "items," or "PPE" should be read to include, but are not limited to, smocks, coats, aprons, cotton gloves, rubber gloves, latex gloves, cutting gloves, mesh gloves, wizard gloves, plastic sleeve covers, hard plastic arm guards, ear plugs, hairnets, safety goggles, bump hats, and boots, knives, hooks, and mesh armor regardless of whether Swift characterizes such items as "clothes" or uses other nomenclature.

Q.    In compliance with Fed. R. Civ. Pro. Rule 34(b)(2)(E)(i), your responses shall be organized and Bates stamped to correspond with the categories in this request.

## REQUESTS

1.    The personnel files, time or attendance records, pay records, and disciplinary records for the named and opt-in plaintiffs.

2.    Any and all collective bargaining agreements regardless of their ratification status.

3.    Electronically maintained data reflecting any time, attendance and pay records of each person who has opted-in to this case, including (a) time of any individual punch in or punch out, regardless of whether those times are used for any purpose by Swift; (b) beginning, ending and break times by which that individual was compensated, or of the master-card by which that person's compensation was determined; (c) the total number of hours for which the individual was compensated each day; (d) any "edits" to either punch-time or paid-time made after the initial record, or made by any person other than the individual opt-in; (e) the hourly pay rate.

4.    Documents or information that in any way concern or pertain to Swift's compliance with the record-keeping requirements described in 29 C.F.R. § 516.2-3.

5.    Documents disclosing or reflecting, or which would aid in discovering, the types of work gear or equipment put on and taken off by the beef processing workers, including

documents reflecting which items workers were required to wear pursuant to Swift's policies, custom, or practice, and/or the requirements of the Occupational Safety and Health Administration ("OSHA"), and/or United States Department of Agriculture ("USDA").

6.    Documents that in any way concern or pertain to policies, practices, or training with respect to beef processing workers' sanitation of themselves or their gear, equipment, or other items.

7.    Documents which relate or concern Swift safety programs, GMP policies, Quality Control SOPs and/or SSOPs, and HACCP SOPs and/or SSOPs.

8.    Any and all documents which evidence USDA's approval of Swift's GMP policies, Quality Control SOPs and/or SSOPs, and HACCP SOPs and/or SSOPs.

9.    Any and all policies related to procedures or requirements related to sanitizing safety equipment, knives and hooks, and or protective equipment including foot bath procedures.

10.   Documents disclosing or reflecting, or which would aid in discovering, Swift's policies, procedures or practices regarding recording time for the jobs performed by the beef processing workers and determining what portion of that time will be compensated, including, but not limited to Swift's policies, procedures or practices regarding individual punch or swipe by employees, the use of master-card of similar systems of determining time to be paid, recording of time spent on donning, doffing or sanitizing of gear used; and recording of start and stop times of any breaks.

11.   Documents disclosing or reflecting, or which would aid in discovering, the amount of time spent by beef processing workers on activities that were excluded from compensable time, including, but not limited to the time spent by beef processing workers in putting on, taking off, cleaning, sanitizing, walking to and from the line, waiting at the line,

waiting to wash, and/or stowing gear or equipment worn or utilized while working on Swift's beef processing line, whether those activities take place pre-shift, post-shift or during breaks.

12.   Documents disclosing or reflecting, or which would aid in discovering, the reasons for not paying the plaintiffs' in full for activities made basis of this suit, including, but not limited to, such activities as obtaining knives and hooks from lockers, sharpening knives, obtaining smocks, walking to and from the production line, donning and doffing equipment on breaks, sanitizing equipment, and stowing the gear and equipment worn while working on Swift's beef processing line, and the identity of the persons who made the decision not to compensate for such activities.

13.   Documents, notes, emails or other information disclosing or reflecting, or which would aid in discovering any collective bargaining, meeting content, management discussions regarding collective bargaining, including discussions about grievances that occurred regarding the subjects covered by the September 11, 2000 Settlement Agreement, Appendix A of the 2004-2009 collective bargaining agreement.

14.   Documents, notes, emails or other information disclosing or reflecting, or which would aid in discovering, any collective bargaining, meeting content, management discussions regarding collective bargaining, notes taken during collective bargaining related to the new collective bargaining agreement subject to ratification.

15.   Documents disclosing or reflecting, or which would aid in discovering, the nature and type of work performed by the plaintiffs and other beef processing workers on Swift's behalf, including, but not limited to, any documents distributed or made available to plaintiffs concerning their job duties or the manner in which their job assignments should be performed.

16.     Documents, video or other information that in any way concerns or pertains to time studies, time-motion studies, or other studies undertaken to estimate or assess the time plaintiffs spent performing activities off the clock made basis of the September 11, 2000 Settlement Agreement.

17.     Documents, video or other information that in any way concerns or pertains to time studies, time-motion studies, or other studies undertaken to estimate or assess the time plaintiffs spent performing activities off the clock for purposes of bargaining the 2004-2009 collective bargaining agreement.

18.     Documents, video or other information that in any way concerns or pertains to time studies, time-motion studies, or other studies undertaken to estimate or assess the time plaintiffs spent performing activities off the clock for purposes of bargaining the new 2009-20__ collective bargaining agreement regardless of its ratification status.

19.     Documents, video or other information that in any way concerns or pertains to time studies, time-motion studies, or other studies undertaken to estimate or assess the time plaintiffs spent performing activities off the clock for any purpose.

20.     Documents disclosing or reflecting, or which would aid in discovering, any record retention policies of Swift and any policies on the means by which Swift maintains information on current and former employees.

21.     All documents that constitute, relate or refer to any communication between Swift and any other person, Union, beef company, trade association, or governmental agency regarding the compensation of beef processing plant workers, including, but not limited to, minutes for trade association meetings.

22.     Documents or other information distributed or made available to plaintiffs concerning the rules, regulations, terms and/or conditions of employment, including, but not limited to, all employee manuals guidelines, handbooks, and disciplinary or corrective action policies, and any policies or directions given to beef processing workers describing when they are expected to be on the premises of the Swift facility for which they work, when they are expected to be at their assigned work station or position, and the sequence under which employees punch in, obtain supplies, don PPE or other items, sanitize any gear, walk to their production work stations; complete production tasks, doff PPE or other items, wash gear, return PPE or other items to lockers or supply rooms and punch out.

23.     Documents or other information related to internal wage and hour compliance discussions or investigations.

24.     Documents reflecting any warnings, disciplinary measures, grievances or other communications with hourly beef processing employees concerning their obligation to wear PPE, sanitary gear, or other items.

25.     Documents on which Swift relies in support of its affirmative defenses, including, but not limited to, a claim that the tasks alleged in the complaint are not compensable or are "de minimis."

26.     Any and all documents relied upon or referenced in answering Plaintiff's First Interrogatories to Defendant.

27.     Any and all plant schematics or diagrams evidencing the plant's layout, location of break rooms, changing areas, etc.

Dated: June 29, 2010

Respectfully submitted,

ROBERT J. CAMP
rcamp@cochranfirm.com
THE COCHRAN FIRM, P.C.
505 North 20th Street, Suite 825
Birmingham, AL 35203
(205) 244-1115 – Phone
(205) 244-1171 – Facsimile

JOSEPH D. LANE
joelane@cochranfirm.com
THE COCHRAN FIRM, P.C.
P. O. Box 927
Dothan, AL 36302
(334) 793-1115 – Phone
(334) 793-8280 – Facsimile

DIANE VAKSDAL SMITH
dsmith@burgsimpson.com
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595 – Phone
(303) 708-0527 – Facsimile

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2010, a copy of the foregoing PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT were served by overnight courtier to all counsel of record, properly addressed as follows:

Walter Vernon Siebert, Esq.
Kelly K. Robinson, Esq.
Sherman & Howard LLC - Denver
633 17th Street, #3000
Denver, CO 80202-3622

ROBERT J. CAMP

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT FOR COLORADO

## CIVIL ACTION NO. 08-cv-01833-RPM-KLM

**ESMERALDA CASTANEDA, et al.,**

**Plaintiffs,**

**v.**

**SWIFT BEEF COMPANY, et al.,**

**Defendants.**

---

## DEFENDANTS' RESPONSE TO PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JBS USA, INC., f/k/a JBS SWIFT & COMPANY

---

COMES NOW JBS USA, L.L.C. a/k/a Swift Beef Company, Swift & Company, Inc., JBS Swift & Company and JBS S.A., by and through their counsel and hereby responds to Plaintiffs' First Request for Production of Documents to Defendant JBS USA, INC., f/k/a JBS Swift & Company as follows:

### REQUESTS

1.      The personnel files, time or attendance records, pay records, and disciplinary records for the named and opt-in plaintiffs.

**RESPONSE:**  Defendant has not been provided with information sufficient to identify the following Plaintiffs: Joshua J. Peters, Samuel Sanchez, Amino N. Galal, Abdulfatah A. Barkadale, Ibrahim A. Iman, Ali B. Abdi, or Esmeralda Castaneda. Manual Gallegos was not employed during the relevant time period. With the exception of those individuals listed, see documents labeled JBS 00001 to JBS 01735.

2.      Any and all collective bargaining agreements regardless of their ratification status.

**RESPONSE:**  See documents labeled JBS 01891 to JBS 01986. No drafts of the 2009 agreement (negotiations completed in 2010) have been prepared by the Union.

3. Electronically maintained data reflecting any time, attendance and pay records of each person who has opted-in to this case, including (a) time of any individual punch in or punch out, regardless of whether those times are used for any purpose by Swift; (b) beginning, ending and break times by which that individual was compensated, or of the master-card by which that person's compensation was determined; (c) the total number of hours for which the individual was compensated each day; (d) any "edits" to either punch-time or paid-time made after the initial record, or made by any person other than the individual opt-in; (e) the hourly pay rate.

**RESPONSE:** Electronic pay records will show beginning and end of shift, edits, total hours worked. See documents labeled JBS 02498 to JBS 09505.

4. Documents or information that in any way concern or pertain to Swift's compliance with the record-keeping requirements described in 29 C.F.R. § 516.2-3.

**RESPONSE:** See pay documents labeled JBS 02498 to JBS 09505, collective bargaining agreements labeled JBS 01891 to JBS 01986, and personnel files for Plaintiffs labeled JBS 00001 to JBS 01735.

5. Documents disclosing or reflecting, or which would aid in discovering, the types of work gear or equipment put on and taken off by the beef processing workers, including documents reflecting which items workers were required to wear pursuant to Swift's policies, custom, or practice, and/or the requirements of the Occupational Safety and Health Administration ("OSHA"), and/or United States Department of Agriculture ("USDA").

**RESPONSE:** See documents labeled JBS 02251 to JBS 02311. There are no USDA requirements and there are no specific OSHA requirements that are applicable.

2

6.      Documents that in any way concern or pertain to policies, practices, or training,

with respect to beef processing workers' sanitation of themselves or their gear, equipment, or

other items.

**RESPONSE:**  See training materials labeled JBS 01808 to JBS 01863.

7.      Documents which relate or concern Swift safety programs, GMP policies, Quality

Control SOPs and/or SSOPs, and HACCP SOPs and/or SSOPs.

**RESPONSE:**  Defendant objects to this interrogatory as the documents requested are irrelevant
and immaterial. Moreover, these documents would not lead to any admissible evidence. Finally,
Defendant is not familiar with all of the acronyms used in the Request.

8.      Any and all documents which evidence USDA's approval of Swift's GMP

policies, Quality Control SOPs and/or SSOPs, and HACCP SOPs and/or SSOPs.

**RESPONSE:**  Defendant objects to this interrogatory as the documents requested are irrelevant
and immaterial.   Moreover, these documents would not lead to any admissible evidence.
Without waiving this objection, Defendant states that there are none. Finally, Defendant is not
familiar with all of the acronyms used in the Request.

9.      Any and all policies related to procedures or requirements related to sanitizing

safety equipment, knives and hooks, and or protective equipment including foot bath procedures.

**RESPONSE:**  See Response to Request No. 6.

10.     Documents disclosing or reflecting, or which would aid in discovering, Swift's

policies, procedures or practices regarding recording time for the jobs performed by the beef

processing workers and determining what portion of that time will be compensated, including,

but not limited to Swift's policies, procedures or practices regarding individual punch or swipe

3

by employees, the use of master-card of similar systems of determining time to be paid, recording of time spent on donning, doffing or sanitizing of gear used; and recording of start and stop times of any breaks.

**RESPONSE:** See JBS 02497.

11.    Documents disclosing or reflecting, or which would aid in discovering, the amount of time spent by beef processing workers on activities that were excluded from compensable time, including, but not limited to the time spent by beef processing workers in putting on, taking off, cleaning, sanitizing, walking to and from the line, waiting at the line, waiting to wash, and/or stowing gear or equipment worn or utilized while working on Swift's beef processing line, whether those activities take place pre-shift, post-shift or during breaks.

**RESPONSE:** Defendant objects to this Request as Defendant does not know what is meant by "stowing gear or equipment…" All other activities are compensated.

12.    Documents disclosing or reflecting, or which would aid in discovering, the reasons for not paying the plaintiffs' in full for activities made basis of this suit, including, but not limited to, such activities as obtaining knives and hooks from lockers, sharpening knives, obtaining smocks, walking to and from the production line, donning and doffing equipment on breaks, sanitizing equipment, and stowing the gear and equipment worn while working on Swift's beef processing line, and the identity of the persons who made the decision not to compensate for such activities.

**RESPONSE:** At this time, Defendant cannot locate any documents responsive to this Request. Defendant will supplement its Responses should any responsive document be located.

4

13.    Documents, notes, emails or other information disclosing or reflecting, or which would aid in discovering any collective bargaining, meeting content, management discussions regarding collective bargaining, including discussions about grievances that occurred regarding the subjects covered by the September 11, 2000 Settlement Agreement, Appendix A of the 2004¬2009 collective bargaining agreement.

**RESPONSE:** Defendant objects based on the collective bargaining privilege. Defendant states affirmatively that it is unaware of any grievances regarding the subjects covered by the September 11, 2000 Settlement Agreement, Appendix A of the 2004-2009 collective bargaining agreement.

14.    Documents, notes, emails or other information disclosing or reflecting, or which would aid in discovering, any collective bargaining, meeting content, management discussions regarding collective bargaining, notes taken during collective bargaining related to the new collective bargaining agreement subject to ratification.

**RESPONSE:** Defendant objects based on the collective bargaining privilege.

15.    Documents disclosing or reflecting, or which would aid in discovering, the nature and type of work performed by the plaintiffs and other beef processing workers on Swift's behalf, including, but not limited to, any documents distributed or made available to plaintiffs concerning their job duties or the manner in which their job assignments should be performed.

**RESPONSE:** Defendant is unable to locate any documents responsive to this Request.

16.    Documents, video or other information that in any way concerns or pertains to time studies, time-motion studies, or other studies undertaken to estimate or assess the time

plaintiffs spent performing activities off the clock made basis of the September 11, 2000 Settlement Agreement.

**RESPONSE:**  See document labeled JBS 02496.

17.    Documents, video or other information that in any way concerns or pertains to time studies, time-motion studies, or other studies undertaken to estimate or assess the time plaintiffs spent performing activities off the clock for purposes of bargaining the 2004-2009 collective bargaining agreement.

**RESPONSE:**  See documents labeled JBS 02493 to JBS 02495.

18.    Documents, video or other information that in any way concerns or pertains to time studies, time-motion studies, or other studies undertaken to estimate or assess the time plaintiffs spent performing activities off the clock for purposes of bargaining the new 2009-20_ collective bargaining agreement regardless of its ratification status.

**RESPONSE:**  See documents labeled  JBS 02427 to JBS 02492, JBS 02201 to JBS 2250 and CD labeled JBS 01987.

19.    Documents, video or other information that in any way concerns or pertains to time studies, time-motion studies, or other studies undertaken to estimate or assess the time plaintiffs spent performing activities off the clock for any purpose.

**RESPONSE:**  See Response to Request No. 18.

EMPLOY\662314.1

20.     Documents disclosing or reflecting, or which would aid in discovering, any record retention policies of Swift and any policies on the means by which Swift maintains information on current and former employees.

**RESPONSE:**  See documents labeled JBS 01736 to JBS 01742.

21.     All documents that constitute, relate or refer to any communication between Swift and any other person, Union, beef company, trade association, or governmental agency regarding the compensation of beef processing plant workers, including, but not limited to, minutes for trade association meetings.

**RESPONSE:**  See document labeled JBS 09506.

22.     Documents or other information distributed or made available to plaintiffs concerning the rules, regulations, terms and/or conditions of employment, including, but not limited to. all employee manuals guidelines, handbooks, and disciplinary or corrective action policies, and any policies or directions given to beef processing workers describing when they are expected to be on the premises of the Swift facility for which they work, when they are expected to be at their assigned work station or position, and the sequence under which employees punch in, obtain supplies, don PPE or other items, sanitize any gear, walk to their production work stations; complete production tasks, doff PPE or other items, wash gear, return PPE or other items to lockers or supply rooms and punch out.

**RESPONSE:**  See documents labeled JBS 01759 to JBS 01780 and JBS 01891 to JBS 01986.

23.    Documents or other information related to internal wage and hour compliance discussions or investigations.

**RESPONSE:**  All discussions took place with counsel; all documents responsive to this request were prepared at the direction of counsel and/or in anticipation of litigation.

24.    Documents reflecting any warnings, disciplinary measures, grievances or other communications with hourly beef processing employees concerning their obligation to wear PPE, sanitary gear, or other items.

**RESPONSE:**  All information responsive to this Request is contained in the personnel file of each individual plaintiff.  Those files are labeled JBS 00001 to JBS 01735.

25.    Documents on which Swift relies in support of its affirmative defenses, including, but not limited to, a claim that the tasks alleged in the complaint are not compensable or are "de minimis."

**RESPONSE:**  Defendant has been unable to locate any documents responsive to this Request at this time.

26.    Any and all documents relied upon or referenced in answering Plaintiff's First Interrogatories to Defendant.

**RESPONSE:**  All documents responsive to this Request are produced herewith.

27.    Any and all plant schematics or diagrams evidencing the plant's layout, location of break rooms, changing areas, etc.

**RESPONSE:**  See CD labeled JBS 01987.

Dated this ___ day of August, 2010.

W. V. Bernie Siebert
Kelly K. Robinson
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: (303) 299-8222
Fax: (303) 298-0940
bsiebert@shermanhoward.com
Attorneys for Defendants JBS USA, Inc.
and JBS S.A.

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of August, 2010, a copy of the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JBS USA, INC., f/k/a JBS SWIFT & COMPANY** was sent via Federal Express to the following:

Robert J. Camp
The Cochran Firm, P.C.
505 North 20th Street, Suite 825
Birmingham, AL 35203

and copies were placed in the U.S. Mail, postage prepaid, addressed to each of the following:

Joseph D. Lane
The Cochran Firm, P.C.
P.O. Box 927
Dothan, AL 36302

Diane Vaksdal Smith
Burg Simpson Eldredge Hersh & Jardine, P.C.
40 Inverness Drive East
Englewood, CO 80112

9

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT FOR COLORADO

### CIVIL ACTION NO. 08-cv-01833-RPM-KLM

**ESMERALDA CASTANEDA, et al.,**

      **Plaintiffs,**

**v.**

**SWIFT BEEF COMPANY, et al.,**

      **Defendants.**

---

### PLAINTIFFS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JBS USA, INC., f/k/a JBS SWIFT & COMPANY

---

Pursuant to Federal Rules of Civil Procedure 34, Plaintiffs request that Defendant JBS USA, Inc., f/k/a JBS Swift & Company (hereinafter referred to as "Swift"), respond to the following requests for production and produce the documents identified below. Production is to be made at such time and place as may be agreed upon by counsel for both parties, within thirty days of this request.

### REQUEST FOR PRODUCTION

1.    Produce in native format (i.e., Excel spreadsheet) Documents Bbates labeled JBS02201 – 02250 previously produced by Defendant in PDF format.

Dated: October 11, 2010

                                 Respectfully submitted,

                                 *(signature)*

                                 **ROBERT J. CAMP**
                                 rcamp@cochranfirm.com
                                 THE COCHRAN FIRM, P.C.
                                 505 North 20th Street, Suite 825
                                 Birmingham, AL  35203
                                 (205) 244-1115 – Phone
                                 (205) 244-1171 – Facsimile

**JOSEPH D. LANE**
joelane@cochranfirm.com
THE COCHRAN FIRM, P.C.
P. O. Box 927
Dothan, AL  36302
(334) 793-1115 – Phone
(334) 793-8280 – Facsimile

**DIANE VAKSDAL SMITH**
dsmith@burgsimpson.com
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595 – Phone
 (303) 708-0527 – Facsimile

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of October, 2010, a copy of the foregoing was served by electronic mail and U. S. Mail, postage properly pre-paid, to all counsel of record, properly addressed as follows:

Walter Vernon Siebert, Esq.
Kelly K. Robinson, Esq.
Sherman & Howard LLC - Denver
633 17th Street, #3000
Denver, CO 80202-3622

ROBERT J. CAMP

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT FOR COLORADO

CIVIL ACTION NO. 08-cv-01833-RPM-KLM

ESMERALDA CASTANEDA, et al.,

Plaintiffs,

v.

SWIFT BEEF COMPANY, et al.,

Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JBS USA, INC., f/k/a JBS SWIFT & COMPANY**

---

COMES NOW JBS USA, L.L.C. a/k/a Swift Beef Company, Swift & Company, Inc., JBS Swift & Company and JBS S.A., by and through their counsel and hereby responds to Plaintiffs' Second Request for Production of Documents to Defendant JBS USA, INC., f/k/a JBS Swift & Company as follows:

### REQUESTS

1.      Produce in native format (i.e., Excel spreadsheet) Documents Bbates (sic) labeled JBS02201-02250 previously produced by Defendant in PDF format.

**RESPONSE:**  See CD produced herewith containing the Excel spreadsheet labeled as JBS 02201-02250-GR PPE Current 071010.xls.

Dated this 20th day of October, 2010.

_W. V. Bernie Siebert_

W. V. Bernie Siebert
Kelly K. Robinson
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO 80202
Tel: (303) 299-8222
Fax: (303) 298-0940
bsiebert@shermanhoward.com
Attorneys for Defendants JBS USA, Inc.
and JBS S.A.

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of October, 2010, a copy of the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JBS USA, INC., f/k/a JBS SWIFT & COMPANY** was sent via Federal Express to the following:

Robert J. Camp
The Cochran Firm, P.C.
505 North 20th Street, Suite 825
Birmingham, AL 35203

and copies were placed in the U.S. Mail, postage prepaid, addressed to each of the following:

Joseph D. Lane
The Cochran Firm, P.C.
P.O. Box 927
Dothan, AL 36302

Diane Vaksdal Smith
Burg Simpson Eldredge Hersh & Jardine, P.C.
40 Inverness Drive East
Englewood, CO 80112

_Clarine Kurtz_

2

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT FOR COLORADO

CIVIL ACTION NO. 08-cv-01833-RPM-KLM

ESMERALDA CASTANEDA, et al.,

      Plaintiffs,

v.

SWIFT BEEF COMPANY, et al.,

      Defendants.

---

### PLAINTIFFS' FIFTH REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JBS USA, INC., f/k/a JBS SWIFT & COMPANY

---

Pursuant to Federal Rules of Civil Procedure 34, Plaintiffs request that Defendant JBS USA, Inc., f/k/a JBS Swift & Company (hereinafter referred to as "Swift"), respond to the following requests for production and produce the documents identified below. Production is to be made at such time and place as may be agreed upon by counsel for both parties, within thirty days of this request.

### DEFINITIONS AND INSTRUCTIONS

A.     "Defendant," "Swift" and the pronoun "you" refer to JBS USA, Inc., f/k/a JBS Swift & Company and its agents, employees, representatives, and unless privileged, attorneys, as well as any entity, agency or committee formed, controlled by or otherwise affiliated with JBS USA, Inc., f/k/a JBS Swift & Company.

B.     These requests are directed to Swift's corporate headquarters, as well as to the plant currently subject to discovery: Greely, Colorado beef processing plant.

C.     As used in these requests, the words "document" or "documents" has the broadest possible meaning accorded to it under Fed. R. Civ. P. 34 and includes, but is not limited to, any

and all documents and information maintained electronically on any computer hard drive, disk, diskette, tape, video or other information storage format.

D.    If any document responsive to this request was, but is no longer, in your possession, custody or control, please identify each such document including:  (a)the type or character of the document (e.g., letter, memorandum, signed statement, notes, etc.); (b) title, if any, of the document; (c) the name and address of the author of the document; (d) the name and address of the recipient of the document, if any; (e) the names and addresses of all recipients of copies of the document, if any; (f) all information contained in each such document; (g) the date and circumstances under which each such document ceased to exist or to be in your possession, custody or control; (h) the reasons that each such document was caused to, or happened to, cease to exist; (i) the time period during which each document was maintained; (j) the location of each such document; (k) the person or persons from whom each such document may be obtained.

E.    If you are claiming that any document or documents requested herein are privileged, describe each such document so that it may be readily identified and state the basis of the privilege claim.

F.    This request is continuing in nature so as to require supplemental or amended responses as provided in Federal Rule of Civil Procedure 26(e).

G.    If the requested documents are maintained in a file, please produce the file folder or container with the documents.

H.    "Identify," when used in reference to a document, means to set forth its title and date of preparation, number of pages, subject matter and present location, and to identify its author, addressee, and each person to whom copies were sent.

I. "And" as well as "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the specifications all responses which might otherwise be construed to be outside the scope. "Each" shall be construed to include the word "any." "Any" shall be construed to include the word "each." "Including" shall be construed to include the phrase "without limitation."

J. The term "Union" as used herein shall refer to United Food & Commercial Workers Local 7.

K. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, whether necessary to bring into the scope of the specification all responses which might otherwise be construed to be outside the scope.

L. The use of any singular word includes both the singular and the plural of that word, and vice versa. The use of any masculine or feminine pronoun includes both the masculine and feminine.

M. The time period covered by these requests is from August 27, 2005 to the present and continuing for corporate headquarters and Greely.

N. The references to "equipment," "gear," "items," or "PPE" should be read to include, but are not limited to, smocks, coats, aprons, cotton gloves, rubber gloves, latex gloves, cutting gloves, mesh gloves, wizard gloves, plastic sleeve covers, hard plastic arm guards, ear plugs, hairnets, safety goggles, bump hats, and boots, knives, hooks, and mesh armor regardless of whether Swift characterizes such items as "clothes" or uses other nomenclature.

O. In compliance with Fed. R. Civ. Pro. Rule 34(b)(2)(E)(i), your responses shall be organized and Bates stamped to correspond with the categories in this request.

## REQUESTS FOR PRODUCTION

1.  During the relevant liability period, all documents, reports, videos or other tangible things evidencing the Plaintiffs' line time measured by Defendant's supervisors, consistent with the testimony of Eric Ray, Doc. 15-8.

2.  Any and all charges filed with the National Labor Relations Board, maintained by Defendant or its attorney, which evidence employees' discontent with the Union and Company's negotiation of plug time minutes for pre-shift or post-shift activities such as donning and doffing, PPE, etc.

3.  Any and all documents evidencing Plaintiffs' pay records, pay checks, pay check stubs and or deductions.

4.  Any and all documents evidencing each Plaintiffs' rate of pay per hour for each week in which they worked during the relevant liability period.

5.  Any and all documents evidencing any bonuses paid to Plaintiffs and the amount of bonus paid.

6.  Any and all documents evidencing the payment of retroactive wage increases to Plaintiffs under the current collective bargaining agreement including but not limited to documents evidencing how each Plaintiffs' individual payment was calculated.

7.  Any and all statements obtained by Defendant from Defendant's hourly employees, supervisors, or management, which relate to the allegations of this litigation.

Dated:  October 28, 2010                        Respectfully submitted,

**ROBERT J. CAMP**
rcamp@cochranfirm.com
THE COCHRAN FIRM, P.C.
505 North 20th Street, Suite 825
Birmingham, AL  35203
(205) 244-1115 – Phone
(205) 244-1171 – Facsimile

4

**JOSEPH D. LANE**
joelane@cochranfirm.com
**THE COCHRAN FIRM, P.C.**
P. O. Box 927
Dothan, AL  36302
(334) 793-1115 – Phone
(334) 793-8280 – Facsimile

**DIANE VAKSDAL SMITH**
dsmith@burgsimpson.com
**BURG SIMPSON ELDREDGE**
**HERSH & JARDINE, P.C.**
40 Inverness Drive East
Englewood, CO 80112
(303) 792-5595 – Phone
(303) 708-0527 – Facsimile

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of October, 2010, a copy of the foregoing was served by electronic mail and overnight courier, properly addressed as follows:

Walter Vernon Siebert, Esq.
Kelly K. Robinson, Esq.
Sherman & Howard LLC - Denver
633 17th Street, #3000
Denver, CO 80202-3622

_____
**ROBERT J. CAMP**

5

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT FOR COLORADO

CIVIL ACTION NO. 08-cv-01833-RPM-KLM

ESMERALDA CASTANEDA, et al.,

Plaintiffs,

v.

SWIFT BEEF COMPANY, et al.,

Defendants.

---

## DEFENDANTS' RESPONSE TO PLAINTIFFS' FIFTH REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JBS USA, INC., f/k/a JBS SWIFT & COMPANY

---

COMES NOW JBS USA, L.L.C. a/k/a Swift Beef Company, Swift & Company, Inc., JBS Swift & Company and JBS S.A., by and through their counsel and hereby responds to Plaintiffs' Fifth Request for Production of Documents to Defendant JBS USA, INC., f/k/a JBS Swift & Company as follows:

## REQUESTS

1.      During the relevant liability period, all documents, reports, videos or other tangible things evidencing the Plaintiffs' line time measured by Defendant's supervisors, consistent with the testimony of Eric Ray, Doc. 15-8.

Response:      See response to Plaintiffs' Fourth Requests for Production of Documents.

2.      Any and all charges filed with the National Labor Relations Board, maintained by Defendant or its attorney, which evidence employees' discontent with the Union and Company's negotiation of plug time minutes for pre-shift or post-shift activities such as donning and doffing, PPE, etc.

Response:     There are no documents that evidence employees' discontent with the Union and Company's negotiation of plug time minutes for pre-shift and post-shift donning and doffing activities.

3.     Any and all documents evidencing Plaintiffs' pay records, pay checks, pay check stubs and or deductions.

Response:     Pay records have been provided and will continue to be provided as opt-ins continue.  See Response to Plaintiffs' First Request for Production of Documents, Request No. 1 and Response and Supplemental Responses thereto.  Checks are retained individually Defendant will make the documents available upon request for Plaintiffs to inspect and copy.

4.     Any and all documents evidencing each Plaintiffs' rate of pay per hour for each week in which they worked during the relevant liability period.

Response:     Previously provided.  See Responses and Supplemental Responses to Plaintiffs' First Requests for Production of Documents No1.

5.     Any and all documents evidencing any bonuses paid to Plaintiffs and the amount of bonus paid.

Response:     Previously requested and provided.  See Plaintiffs' First Set of Interrogatories No. 19 and Response thereto.

6.     Any and all documents evidencing the payment of retroactive wage increases to Plaintiffs under the current collective bargaining agreement including but not limited to documents evidencing how each Plaintiffs' individual payment was calculated.

Response:     Previously provided.

7.     Any and all statements obtained by Defendant from Defendant's hourly employees, supervisors, or management, which relate to the allegations of this litigation.

Response:      Defendant has not sought any statements from any hourly employee concerning the allegations in this civil action.  Any statements from supervisors or management personnel would be subject to the Attorney-Client Privileged

Submitted this ___ day of November, 2010.

W. V. Bernie Siebert
SHERMAN & HOWARD L.L.C.
633 Seventeenth Street, Suite 3000
Denver, CO  80202
Tel: (303) 299-8222
Fax: (303) 298-0940
bsiebert@shermanhoward.com
Attorneys for Defendants JBS USA, Inc. and
JBS S.A.

CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of November 2010, I served the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' FIFTH REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JBS USA, INC. F/K/A JBS SWIFT & COMPANY** on the following in the manner shown:


Via Federal Express

Robert J. Camp, Esq.
The Cochran Firm, P.C.
505 North 20th Street, Suite 825
Birmingham, AL  35203

Via U.S. Mail

Joseph D. Lane
The Cochran Firm, P.C.
163 West main Street
Dothan, AL  36301

Diane Vaksdal Smith
Burg Simpson Eldredge Hersh
 & Jardine, P.C.
40 Inverness Drive East
Englewood, CO  80112

_____

# EXHIBIT 7

Supervisor time records
Case 1:08-cv-01833-RPM   Document 184   Filed 10/18/11   USDC Colorado   Page 50 of 59
Page 1 of 1

## Siebert, W. V. Bernie

**From:**   Robert Camp [RCamp@CochranFirm.com]
**Sent:**   Tuesday, December 28, 2010 3:51 PM
**To:**   Siebert, W. V. Bernie
**Subject:** RE: Supervisor time records

Please pull them so we can review them on the 4th.  I want to see the documents before I deal with copying.

---

**From:** Siebert, W. V. Bernie [mailto:BSIEBERT@shermanhoward.com]
**Sent:** Tuesday, December 28, 2010 2:30 PM
**To:** Robert Camp
**Cc:** Robinson, Kelly K.
**Subject:** Supervisor time records

There are 735 boxes of records which is 20+ pallets.  The time records are stored with other JBS records in a warehouse facility in Greeley.  Because there is no one assigned to the warehouse, we will have to send someone to pull the boxes for your inspection.  It is estimated by JBS that it will take approximately one week to pull the files.  You will also have to make your own arrangements for copying.

Please let me know how you would like to proceed.

W.V. Bernie Siebert
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Direct: 303-299-8222
Fax: 303-298-0940
BSiebert@shermanhoward.com
http://www.shermanhoward.com

**Special E-Mail Circular 230 Disclaimer**:

**Documents attached to this e-mail contain provisions concerning a federal tax issue or issues.  The attachment of documents to this e-mail is not intended to and does not constitute the provision of written advice concerning the federal tax issue(s) referred to in such documents.  Each such document should be reviewed in its final form to determine if it is intended or written to be used, or cannot be used, by any taxpayer for the purpose of avoiding penalties that may be imposed on any taxpayer by the Internal Revenue Service.  For more information regarding this statement, please contact Sherman & Howard L.L.C. or visit our website,
http://www.shermanhoward.com/PrivacyPolicy/Circular230/**

**Siebert, W. V. Bernie**

| | |
|---|---|
| **From:** | Robert Camp [RCamp@CochranFirm.com] |
| **Sent:** | Thursday, December 23, 2010 2:34 PM |
| **To:** | Siebert, W. V. Bernie |
| **Cc:** | Sheri Hughes |
| **Subject:** | Re: Review of Supervisor Time Records |

Really?  You don't see how the manner in which the supervisor started and stopped time for the employees, which is evidenced in those sheets, is relevant to whether employees were paid for all hours worked for liability purposes?  Please explain how it is not relevant.

I'm giving plenty of notice as it is the 23rd, for you to allow us to inspect the documents.  I just need to know one way or the other if you are going to allow us access as you have already represented you would in your response to our rfp, so I can get a motion filed if need be because as you know we it is coming down to the line.

Let me know something Monday.

Happy holidays

Sent from my Cochran Firm iPhone - Please excuse terseness & typos

Confidential:  This email is subject to 18 U.S.C Sec. 2510-2521 and legally privileged.  Unauthorized use or review is prohibited.  If you are not the intended recipient please contact the sender by Reply email and delete or destroy all copies of the message.  Thx

On Dec 23, 2010, at 3:14 PM, "Siebert, W. V. Bernie" <BSIEBERT@shermanhoward.com> wrote:

> I don't believe the time records are germane to the issue of liability which is the initial stage of the litigation.  If, however, you can demonstrate that they are, I will check to see where and when the company can make the 700+ boxes of time sheets available to you and on what date.  Three days notice may not be sufficient.  If production is appropriate, you will have to make your own arrangements for copying.
>
> I will check again to see if there are any documents other than the time sheets that are responsive to your Fourth Request for Production No. 1.

W.V. Bernie Siebert
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Direct: 303-299-8222
Fax: 303-298-0940
BSiebert@shermanhoward.com
http://www.shermanhoward.com

**Special E-Mail Circular 230 Disclaimer:**

**Documents attached to this e-mail contain provisions concerning a federal tax issue or issues.  The attachment of documents to this e-mail is not intended to and does not constitute the provision of written advice concerning the federal tax issue(s) referred to in such documents.  Each such document should be reviewed in its final form to determine if it is intended or written to be used, or cannot be used, by any taxpayer for the purpose of avoiding penalties that may be imposed on any taxpayer by the Internal Revenue Service.  For more information regarding this statement, please**

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT FOR COLORADO
CIVIL ACTION NO. 08-cv-01833-RPM-KLM

ESMERALDA CASTANEDA, et al.,

     Plaintiffs,

v.

JBS USA, LLC,

     Defendant.

---

## NOTICE OF 30(b)(6) DEPOSITIONS

---

**TO: ALL ATTORNEYS AND PARTIES**

Please take notice that plaintiffs, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, will take the deposition(s), upon oral examination, of designated representative(s) of JBS USA, LLC (hereinafter "defendant" and/or "Swift") relative to the claims of Plaintiffs beginning on a **mutually agreeable date and time at a location to be determined**, and continuing day to day, as needed, until completed. Representative(s) residing outside the jurisdiction of this Court will have their deposition(s) videotaped.

Plaintiffs will examine the witness(es) in his or her capacity as Swift's designated representative(s) regarding the matters described herein below. Said witness(es) should be knowledgeable on the matters for which they are designated by Swift and/or which are known or reasonably available to the Defendant on the following subjects:

1. The organizational structure of Swift, including specifically any mechanisms for oversight of individual plants by corporate or regional managers.

2. The organizational structure of Swift's Greeley Beef Processing Plant.

3. Swift's policies and practices regarding the maintenance of records of hours worked and wages paid for non-exempt workers at the beef processing plant, including the positions of the persons involved in formulating the policies, what training, if any, is provided to

inform employees and supervisors of these policies, and what measure, if any, are taken to ensure compliance with these policies.

4.    Swift's policies and practices regarding the calculation, recordkeeping and compensation for "hours worked" by beef processing workers, including, but not limited to, (a) Swift's policies and practices regarding the use of "line time" or "master card time," and (b) Swift's policies and practices regarding the compensability of time spent obtaining equipment and tools, donning, doffing and cleaning safety and sanitary equipment or gear for hourly beef processing plant workers; and (c) the position(s) of the person(s) involved in formulating the policies, what training, if any, is provided to inform employees and supervisors of these policies, and what measures, if any, are taken to ensure compliance with these policies.

5.    Swift's policies, practices or requirements regarding the "clocking in," scanning of identification cards, or punching of time cards by hourly beef processing plant employees and Swift's use of such information.

6.    Swift's policies, practices or requirements regarding adjusting beef processing workers' punch time records and/or payroll records when determining hours worked for payroll purposes.

7.    Swift's policies, practices or requirements relating to the time that beef processing workers must arrive at their plant and the time they must report to their respective positions on the processing line either at the beginning of their shift or after unpaid breaks.

8.    The respective job responsibilities of all of the various lines, groups or sections of workers in Swift's plant.

9.    The safety or sanitary equipment or gear (for example, aprons, rubber gloves, cutting gloves, boots, ear plugs, safety glasses, etc.) or tools (for example, knives, hooks, scissors or knife sharpeners, etc.) that workers on each line or department wear or use for their jobs.

10. Swift's policies or practices regarding whether such equipment or gear is required, and, if required, the reason(s) that Swift requires it.

11. The basis upon which Swift decided not to pay employees under the "continuous workday rule."

12. The basis upon which Swift asserts it has acted in good faith.

13. The incidence of and responses to complaints by employees, union grievances, National Labor Relations Board charges or government agencies regarding Swift's failure to pay all hours worked and/or overtime compensation to employees.

14. Any time studies, analyses or investigations commissioned by or in the possession of Swift, which relate in whole or in part to the allegations in the complaint, including any of the following: (a) the time it takes for beef plant workers to obtain, don or doff safety or sanitary equipment, clothing or gear; (b) compensating hourly beef processing plant workers based on "line time" or "master card time;" (c) the payment of overtime to hourly beef processing plant workers; (d) the savings, labor costs, profits or losses resulting from using "master card time" or "line time" to compensate hourly processing plant employees instead of other methods, or from compensating or not compensating hourly processing plant employees for the time spent obtaining, donning and doffing safety or sanitary equipment, clothing and gear.

15. The basis upon which Swift asserts the uncompensated work at issue in this matter is de minimis.

16. The collective bargaining that occurred regarding the subjects covered by §203(o) of the FLSA which Swift has pled as a defense to the Plaintiffs' claims in this action, including, but not limited to, the collective bargaining that occurred regarding compensable work time, the continuous workday, and/or the practice by which such compensable work time "excluded any time spent in changing clothes or washing at the beginning or end of each workday . . . from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement

3

applicable to the particular employee." 29 U.S.C. §203(o).

17.    The collective bargaining that occurred regarding non-§203(o) activities which Swift claims it negotiated on behalf of employees.

18.    Any communications between Swift and the United Food & Commercial Workers Union regarding: (a) the use of master card time to compensate beef processing plant workers, or (b) the compensation of beef processing plant workers for the time they spend obtaining, donning, doffing or cleaning safety or sanitary equipment, clothing and gear.

19.    Any communications between Swift and any beef company, trade association or governmental agency regarding (a) the use of master card time to compensate beef processing plant workers, or (b) the compensation of beef processing plant workers for the time they spend obtaining, donning, doffing or cleaning safety or sanitary equipment, clothing and gear.

20.    The nature and extent of any information concerning current and former employees that is maintained on or retrievable from any computer or other electronic or mechanical source of Swift, including, but not limited to, information concerning hire date, job assignments, hours worked, overtime worked, compensation, rates of pay, termination date, and any other personnel, human resource, or employment data.

21.    The most efficient, effective and reliable method of tabulating or compiling information for Swift concerning hire date, job assignments, hours worked, overtime worked, compensation, rates of pay, termination date, and any other personnel, human resource, or employment data.

22.    The record retention policy of Swift and the means by which Swift maintains information on current and former employees.

23.    The nature and type of work performed by Plaintiffs and similarly situated workers on Swift's behalf.

24.    The identity of the person(s) who supervised, managed, evaluated or otherwise monitored the work performed by the named Plaintiffs on Swift's behalf.

4

25.   The types of work gear, clothes or equipment put on and taken off by the named Plaintiffs, including, but not limited to, mesh equipment, plastic sleeves, aprons, smocks, rubber and/or cotton gloves, hairnets, earplugs, boots or slip resistant shoes, knives and/or hooks, water knives, scissors, mesh gloves, hard plastic arm guards, etc.

26.   The operation of Swift's "line" or "mastercard" method of compensation and/or recording compensable time for the jobs performed by the named plaintiffs.

27.   The time spent by the named Plaintiffs and other similarly situated employees on activities that were excluded from "line", "mastercard" or compensable time, including, but not limited to, the time spent by them in putting on, taking off, cleaning, sanitizing, and/or stowing gear or equipment worn while working on Swift's beef processing line at the beginning or end of the day or at the beginning or end of breaks or lunch during the day, including related walk and wait time.

28.   The reasons for not paying employees in full for activities the named Plaintiffs performed on Swift's behalf while line or mastercard time was not recorded, including, but not limited to, such activities as putting on, taking off, cleaning, sanitizing, and stowing the gear and equipment worn while working on Swift's processing line.

29.   The identity of the person(s) who decided not to pay the named Plaintiffs for activities done on Swift's behalf while line or mastercard time was not recorded, including, but not limited to, putting on, taking off, cleaning, sanitizing, and stowing the gear and equipment worn while working on Swift's processing line.

30.   The type of gear, clothes or equipment the named Plaintiffs were required to wear pursuant to Swift's policies, custom, or practice, and/or the requirements of the Occupational Safety and Health Administration ("OSHA"), and/or United States Department of Agriculture ("USDA").

31.   Any and all negotiations under the current collective bargaining agreement regarding retroactive back pay for certain activities made basis of this suit, including, but not limited to, the determination of the amount to be paid in minutes, the calculation of the

5

amounts to be paid.

32. Any and all negotiations under the current collective bargaining agreement regarding retroactive wage increases, including, but not limited to, the determination of the amounts to be paid, the calculation of the amounts to be paid, and the inclusion or exclusion of overtime.

33. The requirements of Swift under its quality control policies to ensure employees engage in proper hygiene practices, including, but not limited to, Swift's requirements that employees wear certain sanitary clothing, engage in certain sanitizing practices related to equipment, clothing and processing tools, utilize foot baths, maintain equipment in their lockers, obtain equipment from specified areas of the plant.

34. The requirements of USDA with regard to obtaining and stowing equipment and clothes, leaving equipment and sanitary clothing on Swift's premises, wearing equipment and clothes inside or outside production areas and the facility, and sanitation practices.

35. The effects on the processing facility for failing to comply with USDA's requests, tags, etc.

36. The requirements of Swift with regard to obtaining and stowing equipment and clothes, leaving equipment and sanitary clothing on Swift's premises, wearing equipment and clothes inside or outside production areas and the facility, and sanitation practices.

37. Swift's ergonomic and safety policies as they relate to sharpening or utilizing sharp knives, and adjustable platforms on the line.

38. The technological and physical capabilities of Swift's time clocks and timekeeping/payroll software.

39. The process employees engage in pre shift, preparing themselves to work on the line.

40. The process employees engage in on unpaid break preparing to go to break and upon their return from unpaid break in preparing themselves to work on the line.

41. The reports, formal or informal, utilized and maintained by Swift which evidence the start and stop of the line time for payroll purposes, evidencing line time for quality

control, USDA, and maintenance purposes.

42.   The reports utilized by Swift which evidence breaks or gaps in line time for purposes of

providing employees an unpaid meal break.

Dated: November 2, 2010.                    Respectfully submitted,

                                            THE COCHRAN FIRM, P.C.

                                            ROBERT J. CAMP
                                            rcamp@cochranfirm.com
                                            505 North 20th St., Suite 825
                                            (205) 244-1115 – Phone
                                            (205) 244-1171 – Fax

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above was sent, November 2, 2010, by e-mail

and U. S. Mail, properly addressed and postage prepaid, on the following:

W. V. Bernie Siebert, Esq.
Kelly K. Robinson, Esq.
Sherman & Howard, LLC - Denver
633 17th St., Ste. 3000
Denver, CO  80202-3622

                                            ROBERT J. CAMP